758

H. H. McPike, U. S. Atty., and Robert L. McWilliams, and S. P. Murman, Asst. U. S. Attys., all of San Francisco, Cal., for appellant Pillsbury.

Resleure, Vivell & Pinckney, of San Francisco, Cal., for appellant Weidemann.

F. D. Madison, Eugene M. Prince, and Francis Gill, all of San Francisco, Cal., for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

On November 15, 1929, the appellant Weidemann fell and injured his right arm and hand while on board the Metha Nelson, a sailing vessel owned and operated by the appellee, and lying in the harbor of Oakland, Cal. Proper notice having been given, pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. § 901 et seq.), a hearing was held on January 27, 1930, before the appellant Pillsbury, to ascertain the appellant Weidemann's right to compensation. The appellee was not represented at the hearing, having previously written to the appellant Pillsbury that it desired him to "pass on the responsibility of this particular case."

On February 1, 1930, Pillsbury filed his award, as follows:

(1) That Weidemann was employed by the appellee when injured; (2) that the injury occurred on navigable waters of the United States; (3) that Weidemann suffered temporary total disability, entitling him to $25 a week as compensation, "until further order of the Deputy Commissioner."

The award also ordered the appellee to pay Weidemann $264.28 "to and including January 27, 1930, less all payments heretofore made on said account."

On August 12, 1931, the appellee advised Pillsbury that Weidemann had fully recovered from his injury and requested that further liability under the award be terminated. Weidemann resisted the appellee's request. Accordingly, after proper notice, on August 28, 1931, the matter of terminating the liability was heard before Pillsbury, who, on September 16, 1931, ruled as follows: (1) That Weidemann's right arm became permanently disabled on November 15, 1930, the first anniversary of the accident; (2) that there was $1,025 unpaid accrued compensation due Weidemann from November 15, 1930, to August 28, 1931, which the deputy commissioner ordered the appellee to pay, in addition to $25 a week for 60.64 weeks thereafter, beginning August 28, 1931, the date of the last hearing.

It is admitted that the appellee received a copy of each of the two foregoing orders of the deputy commissioner.

Within 30 days thereafter, the appellee petitioned Pillsbury to set aside his order of September 16, 1931, and for a rehearing, claiming fraud on the part of Weidemann as to the question of employment, and lack of notice in the order of February 1, 1930, of liability for any further compensation, in addition to the first award.

On October 16, 1931, on the ground that the appellee had failed to establish fraud, and on the further ground that the jurisdictional facts adjudicated by the award of February 1, 1930, had established the appellee's liability for the accrued compensation awarded on September 16, 1931, Pillsbury denied the appellee's petition for a rehearing. On the ground that no fraud on Weidemann's part had been shown, the court below sustained a motion for nonsuit in an equity action, No. 3056–L, arising out of the same facts, which was brought by the appellee, but which is not now before this court.

On November 16, 1931, the appellee filed the present action. A trial de novo was held to review the jurisdictional fact of Weidemann's employment by the appellee. Thereafter, the court below entered a decree setting aside Pillsbury's orders of September 16, 1931, and October 16, 1931, enjoining Pillsbury from enforcing the compensation award, and ordering that Weidemann take nothing from the appellee on account of the injury or by reason of any orders theretofore entered by Pillsbury.

While the present action originally was filed as a suit in equity, by stipulation the cause was transferred to the admiralty docket, to be tried simultaneously with No. 3056–L, in equity, supra.

Three assignments of error filed by Pillsbury present a single question; namely, Did the court below have jurisdiction to entertain this action, under section 21 (a) and (b) of the Longshoremen's and Harbor Workers' Compensation Act of 1927?

The appellant Weidemann also asserts as error the lower court's finding as to nonemployment, which was as follows: "Respondent Pillsbury, with the exercise of reasonable care, should have known prior to entry of the compensation order and award of February 1, 1930, that respondent Weidemann was not an employee of libelant [appellee], and that the injury alleged by him was not within the purview of the Longshoremen's and Harbor Workers' Compensation Act. * * *"

Section 21 (a) and (b) of the act in question reads in part as follows:

"(a) A compensation order shall become effective when filed in the office of the deputy commissioner as provided in section 19 [section 919 of this chapter], and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subdivision (b) of this section, shall become final at the expiration of the thirtieth day thereafter.

"(b) If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order, and instituted in the Federal district court for the judicial district in which the injury occurred." 44 Stat. pt. 2, 1436 (33 U.S.C.A. § 921 (a, b).

Section 22 (44 Stat. 1437), as it stood at the time the present suit was brought, was as follows: "Upon his own initiative, or upon application of any party in interest, on the ground of a change in conditions, the deputy commissioner may at any time during the term of an award and after the compensation order in respect of such award has become final, review such order in accordance with the procedure prescribed in respect of claims in section 19, and in accordance with such section issue a new compensation order which may terminate, continue, increase, or decrease such compensation. Such new order shall not affect any compensation paid under authority of the prior order."

In the instant case, Pillsbury's first order, of February 1, 1930, awarded Weidemann $25 a week from January 27, 1930, "until further order of the Deputy Commissioner."

Thus, both by the provisions of the statute and the terms of the order itself, the deputy commissioner retained jurisdiction over Weidemann's claim for compensation. But that jurisdiction was limited by section 22 to be exercised only in the event that there was "a change in conditions."

In other words, the supplemental order of September 16, 1931, did not and could not review the jurisdictional question of employment; for, obviously, that question is not susceptible to any "change in condi-

ticns." The claimant is either in the employ of the shipowner at the time of the injury, or he is not employed. Nothing that occurs afterward can alter the status that exists at the time of the accident.

The expression "change in conditions" refers to a change in the physical condition of the employee. Atlantic Coast Shipping Co. v. Golubiewski (D.C.) 9 F.Supp. 315, 317.

In its libel, the appellee charges that Weidemann "fraudulently misrepresented" the jurisdictional facts to Pillsbury, and that "a fraud had been perpetrated against" the appellee. The court below, however, expressed itself unequivocally on the subject of fraud: "I don't see anything in his [Weidemann's] conduct which indicates to me he was trying to deceive or defraud or get something that he was not entitled to. I think he honestly believed and believes now, probably, that he was employed at that time. Consequently, there is no element of fraud that I can see."

Indeed, the testimony of Austin K. Tichenor, vice president and general manager of the appellee, conclusively shows that he did not rely upon Weidemann's statements as to his status, but upon the statements of Roy E. Astrup, superintendent of the appellee's shipyards at Alameda, Cal. In a series of searching questions, the District Judge himself elicited this information from Tichenor:

"Q. In other words, you didn't go out trying to round up evidence? A. No.

"Q. It was more a matter of sympathy? A. I knew both of these men for years.

"Q. But as a matter of fact, even though his statements might be false they didn't affect you in making the representation to your company? A. No, not at that time.

"Q. You relied upon your subordinate, Captain Astrup, did you? A. I did."

In its libel, the appellee averred that it "could not, with reasonable diligence, have discovered" the evidence surrounding the circumstances of Weidemann's injury. In its brief, the appellee stresses the "open spirit of cooperation with the Deputy Commissioner" in which the "appellee was originally misled into consenting to an award of $264.28." It seems strange, however, that an employer would require 23 months to ascertain whether or not a certain individual was in its employ on a given date.

Such tardiness strongly suggests lack of due diligence—particularly in view of the fact that Tichenor admits he did not "go out trying to round up evidence."

Another probable reason for the shipowner's inaction after Pillsbury's first order was that the lump-sum award was small. This is clearly indicated in the appellee's brief:

"Upon discovery of facts that appellee was not liable for the injury to Weidemann's hand and wrist, it was the Deputy Commissioner's duty to absolve appellee of further liability.

"Instead, he held that appellee had consented to a finding of employment by not seeking injunctive redress within thirty days of February 1, 1930, *when only $264.28 was involved,* and that he therefore had no authority to relieve appellee of the burden of his supplementary award made twenty months later *for ten times that amount."* (Italics our own.)

Again, at the trial in the court below, one of the appellee's proctors even more clearly indicated that the small size of the award was the *controlling* reason for the appellee's failure to contest the deputy commissioner's first order:

"Q. In other words, if you take your construction of the Act, the question of employment was finally settled by the first finding? A. Yes.

"Q. When that became final you could go on then and build up on that indefinitely the judgments against the Alaska Packers Association, and prevent us from coming back and showing that he was not our employee, *though we were unwilling to appeal the case for $264?"* (Italics our own.)

Be that as it may, it is undisputed that, despite the fact that due notice was served upon the appellee, the appellee chose not to be represented at the first hearing before the deputy commissioner. On the contrary, the appellee filed before Pillsbury a formal answer, admitting "that the relationship of employer and employee existed at the time of the injury." Nor was the appellee represented at the second hearing, on August 28, 1931, which culminated in the issuance of the second order, dated September 16, 1931, although due notice of such hearing was served upon the appellee.

"The whole thing," the appellee's proctor candidly states in his brief, "had been left to Pillsbury's discretion to do the right thing between the parties."

But now that Pillsbury's "discretion" proves not to have been exercised in a manner acceptable to the appellee, the latter is complaining of the Deputy Commissioner's lack of jurisdiction.

Section 21 of the act (33 U.S.C.A. § 921) provides that a compensation order shall become final after 30 days, unless proceedings for its abrogation are instituted in the District Court within that time. Associated Indemnity Corporation v. Marshall (C.C.A.9) 71 F.(2d) 235, 236; Id. (C.C.A.) 71 F.(2d) 420. In view of that provision, and particularly under the record made out in this case, to permit the jurisdictional fact of employment to be questioned 20 months after the original compensation order would, we think, result in frittering away the purpose of the Longshoremen's and Harbor Workers' Compensation Act.

That the purpose of the act is to bring about "final awards and termination of litigation" after 30 days seems to have been recognized in another case by the District Judge who tried the instant suit. United Fruit Co. v. Pillsbury (D.C.) 55 F.(2d) 369, 370.

Decree reversed.

WILBUR, Circuit Judge (dissenting).

The Alaska Packers Association authorized its employee and agent Ernest Califro to ascertain the cubic capacity of one of its schooners, the Metha Nelson, and for that purpose to procure the assistance of John Lyons, if he could be found, and, if not, the services of Capt. Klotz, or of Capt. Frank E. Weidemann, to remove the hatches of the Metha Nelson. Ernest Califro could not find John Lyons or Capt. Weidemann, so he procured the services of Capt. Klotz, and proceeded to measure the capacity of the schooner. While they were in the hold of the vessel, so engaged, Capt. Weidemann appeared on deck, and, unsolicited, attempted to descend into the hold, and in doing so fell from the ladder and suffered the injuries for which he was awarded compensation by the deputy commissioner.

The association, believing that Capt. Weidemann had been employed by Califro, as authorized, and during the latter's absence, notified the deputy commissioner of the accident and requested him to make the appropriate order. This was done.

After the second award was made on September 16, 1931, the association ascertained from Califro that he had not employed Capt. Weidemann, and within 30 days after the order the association brought the newly discovered evidence and situation to the attention of the deputy commissioner by a motion to set aside the order of September 16, 1931, on the ground of fraud and mistake in the procurement of the second order. This application was denied upon the ground that the fact of employment had been determined at the time of the first award and could not be reconsidered on the application for a new award based on new conditions.

This decision of the deputy commissioner, be it observed, was rendered before the decision of the Supreme Court in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L. Ed. 598, decided February 23, 1932, and was in accordance with the views of the compensation commissioner, as embodied in its rules (see dissenting opinion of Judge Brandeis in Crowell v. Benson, supra, 285 U.S. 22, at pages 67, 68, 89, note 25, 52 S. Ct. 285, 307, 76 L.Ed. 598). In that case, the Supreme Court held that the jurisdictional finding of the deputy commissioner was not binding on the District Court or on the parties in an action brought within the time limited in the act, but that the question was to be tried de novo in the court, upon the evidence there introduced.

Until that decision of the Supreme Court, it was a matter of doubt whether there could be a trial de novo on the jurisdictional question. It was this uncertainty, no doubt, that impelled the association to present its newly discovered evidence as to employment to the deputy commissioner, in the form of an application to vacate the award of September 16. Upon the denial, by the deputy commissioner, of its petition for a rehearing on October 16, 1931, the association on November 16, 1931, filed the present action alleging the foregoing facts and praying for an injunction against the enforcement of the supplemental order awarding Capt. Weidemann the additional sum of about $2,850 for his injuries which were found to be permanent. The trial court found the facts alleged by the association to be true and permanently enjoined the enforcement of the order. The fact ascertained by the court that Capt. Weidemann was not an employee of the association at the time of the injury was jurisdictional, and one to be determined by the court, by a trial de novo, Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, if the question is seasonably brought to the attention of the court. The question then

is this: Was the association bound by the finding of employment, upon which the first award was made when the deputy commissioner made the second and ten times greater award for the same injury?

My associates, as I understand, hold that the failure to seek a judicial review of the jurisdictional question within 30 days after the first award foreclosed that question at the time of the second, additional and greater award. This is in accord with the view of the dissenting members of the Supreme Court, as expressed by Justice Brandeis in Crowell v. Benson, supra, but is, I believe, opposed to the views of the majority of the court as stated by Chief Justice Hughes. The Supreme Court held, in effect, that the finding of the deputy commissioner as to the fact of employment had no effect, probative or otherwise, upon the trial of that question in court. The validity of the deputy commissioner's order the Supreme Court held depended upon the existence of a contract of employment, and his decision upon that jurisdictional question was in no way binding upon the court, which was required to determine that question upon evidence presented to it by the parties. If the deputy commissioner were a court rather than an administrative officer, his finding of jurisdiction in the first proceeding would no doubt be conclusive upon the second and supplementary application for increased compensation due to the development of conditions not foreseen or compensated for in the first instance. But the jurisdiction of the administrative officer to take any action at all is dependent upon the fact of employment, and this factual question is one which Congress had no power to take away from the court. Crowell v. Benson, supra. That the first order is effective and enforceable is conceded, because not attacked within 30 days. It does not follow that the second order, which the deputy commissioner had no authority or jurisdiction to make, is sustainable because the previous erroneous finding of jurisdiction was consented to by the association, and because the order was complied with in the mistaken belief that the fact was as found by the deputy commissioner. The deputy commissioner could not acquire jurisdiction to make a further and supplementary order of relief merely by reason of his erroneous finding of the jurisdictional fact in the first instance. The law under which he acted expressly provided that the second award, like the first, was subject to attack in the courts by an application for

injunctive relief, 33 U.S.C.A. § 921 (b), and section 22 of the act (44 Stat. 1437), wherein the jurisdiction of the deputy commissioner to make the order is a sufficient reason for granting relief. Crowell v. Benson, supra. Such an application, however, must be made within the period of 30 days after the award is filed in the office of the deputy commissioner. The new compensation order was made and filed September 16, 1931. This order by the terms of the act became final and conclusive upon the expiration of 30 days after it was filed. 33 U.S.C.A. § 921 (a). The application to the court was made November 16, 1931, upon the theory that action of the deputy commissioner upon the motion for a rehearing, and for a vacation of the order of September 16, was a final order awarding compensation, as to which an application for an injunction might be made to the court within 30 days. The order of September 16 was the order making the award, and the application for a rehearing or a reconsideration, or a vacating of the order, did not extend the time for the commencement of an action in the District Court for an injunction. That time ran from the filing of the new compensation award.

I am therefore of opinion that the application to the District Court was too late, and that the proceedings should have been dismissed for that reason. Consequently I concur in the order of reversal, but am of opinion that the trial court should be directed to dismiss the action because filed too late.

Circuit Court of Appeals, Ninth Circuit.
Sept. 21, 1936.