**AEROJET–GENERAL SHIPYARDS, INC., a corporation, and The Home Indemnity Company, a corporation, Plaintiffs-Appellants,**

**v.**

**William M. O'KEEFFE, etc., Defendant-Appellee.**

**No. 29265.**

United States Court of Appeals, Fifth Circuit.

April 23, 1971.

**509**

George Stelljes, Jr., Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., for appellants.

John L. Briggs, U. S. Atty., Jacksonville, Fla., L. H. Silberman, Sol., U. S. Dept. of Labor, Morton Hollander, Chief Appellate Section, William D. Ruckelshaus, Asst. Atty. Gen., Robert V. Zener, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

In this case an employer, Aerojet-General Shipyards, Inc., and its workman's compensation insurance carrier, The Home Indemnity Company (hereinafter collectively referred to as Aerojet), both appeal the district court's grant of summary judgment in favor of appellee William M. O'Keeffe, Deputy Commissioner, Sixth Compensation District, United States Department of Labor (O'Keeffe or the Deputy Commissioner hereinafter), entered after all parties moved for summary judgment. The judgment upheld the Deputy Commissioner's award of compensation for permanent total disability made in favor of Everett L. Jacques, an employee of Aerojet. The award was the result of a modification of a prior order which rejected Jacques' claim. Aerojet maintains that the district court erred in upholding the award because the Deputy Commissioner reversed his prior order on the basis of a mistake in a determination of fact in

the absence of evidence that a mistake had occurred. A second question raised is whether the Deputy Commissioner properly received in evidence a medical report without requiring its author to be present at the hearing for cross-examination. Since we find merit in the first contention and reverse for that reason, we pretermit discussion of the second question presented.

The claimant, Jacques, was employed by Aerojet as a foreman in charge of sandblasting crews for approximately nine years prior to the onset of his disability. In this capacity he would supervise and inspect the sandblasting of large interior tanks of ships undergoing repair at Aerojet's facility. This activity necessarily brought him into contact with large amounts of silica dust as well as other occupational fumes and dusts.

In August, 1964, Jacques became temporarily disabled due to a condition in his left lung which resulted in his hospitalization. During the next year he was hospitalized twice with chest pains and again in November, 1965, for swelling in his legs. Jacques' failing health ultimately resulted in his permanent total disability.

The compensation claim involved was filed in October, 1965, under the Longshoremen's and Harbor Workers' Compensation Act of 1927, Title 33, U.S.C., Section 901 et seq. A hearing on the merits of the claim was held before the Deputy Commissioner, in April, 1966. At this first hearing, extensive testimony and documentary evidence was received as to the nature of Jacques' illness and the relationship between his resulting disability and his employment.

Despite lack of a positive diagnosis by any of the several doctors who expressed an opinion, it was generally conceded that claimant was probably suffering from a collagen disease, a loose collective designation for a group of disorders involving increase and proliferation of connective and supportive tissues of several areas of the body, including the lungs and the bones, tendons, skin, et cetera

as well, rather than from silicosis, the usual occupational disease associated with sandblasting.[1] Collagen diseases are not causally related to inhalation of silica or other foreign matter, so far as is known to medical science. Stedman's Medical Dictionary lists the following as among so-called collagen diseases: serum sickness, rheumatic fever, systemic lupus erythematosus, rheumatoid arthritis, seleroderma, polyarteritis. nodosa, and dermatomyositis.

The primary question sought to be resolved by the Deputy Commissioner at this first hearing was the degree, if any, to which the claimant's employment caused or contributed to his disability. Although neither x-rays nor a biopsy of lung tissue indicated the presence of silicon in Jacques' lungs, the various doctors involved offered conflicting views as to this question. Dr. Charles T. Montgomery, claimant's personal physician and a general practitioner, testified that he believed Jacques' exposure to industrial dusts either caused or contributed to the impairment of his health. On the other hand, Dr. A. E. Anderson, a specialist in internal medicine and chest diseases indicated that in his opinion Jacques' exposure to industrial dusts did not cause the condition or worsen any pre-existing lung condition unrelated to his employment.

Subsequent to the first hearing but prior to the Deputy Commissioner's decision, he referred Jacques to Dr. Philip W. Horn, a specialist in internal medicine with a subspecialty in pulmonary diseases.[2] Dr. Horn concluded in his report that Jacques' disability could be directly attributable to his work and working conditions.

Despite the opinions of Drs. Montgomery and Horn that Jacques' disability could be directly related to his employment and that his employment either caused or contributed to his disability, Deputy Commissioner O'Keeffe, on February 23, 1967, entered an order denying Jacques' claim. His Findings of Fact found that Jacques, while working for Aerojet, had developed a collagen disease; that he did not have silicosis; that there is no proven causal relationship between sandblasting and a collagen disease; and that "claimant's present lung condition is not the result of exposure to environmental factors at the work site".

No attempt was made by the claimant to have this order suspended or set aside and it became final after 30 days. Title 33, U.S.C., Section 921(a). Nevertheless, five months later, on July 24, 1967, asserting authority to act based upon possible mistake in a determination of fact, under Title 33, U.S.C., Section 922,[3] O'Keeffe reopened the claim on his own initiative and appointed Dr. Gerald P. Rodnan as an impartial specialist to review all of the medical data in the case.

After Dr. Rodnan's report was received, a second hearing was held by O'Keeffe in May, 1969. The evidence received at this hearing consisted only of the written report of Dr. Rodnan, the testimony of Dr. Horn, who had not tes-

---

1. There was some speculation as to whether claimant was suffering from silicosis, although it was not affirmatively indicated by the medical evidence presented.

2. Pursuant to the Deputy Commissioner's authority to have the claimant examined by a government-designated specialist, Title 33, U.S.C. § 919(h).

3. Title 33, U.S.C., Section 922, provides in part:
   "§ 922. Modification of awards
   Upon his own initiative, or upon the application of any party in interest, on the ground of a change in conditions or *because of a mistake in a determination*

*of fact by the deputy commissioner,* the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order which may *terminate, continue, reinstate, increase or decrease* such compensation or award compensation." [Emphasis supplied]

tified at the previous hearing but whose report was considered, and some brief testimony of Jacques. Dr. Rodnan did not personally examine the claimant but based his report exclusively upon a review of the entire previous medical evidence as to this claim including the stenographic transcript of the prior hearing before the Deputy Commissioner. In contrast, Dr. Horn, appointed to examine Jacques by the Deputy Commissioner following the first hearing, continued to treat Jacques as his attending physician in the two years before the second hearing.

Soon after the second hearing O'Keeffe entered on July 3, 1969, his "Compensation Order Modification of Rejection and Award of Compensation", containing "Modified Findings of Fact" in which he found that Jacques' employment related exposure to silica dust and other occupational fumes and dusts materially aggravated and hastened his disabling condition. Based on this finding O'Keeffe awarded Jacques $13,980.00 (199⅝ weeks at $70.00 per week) as compensation for permanent total disability, and $2500.00 for attorney's fees. The latter figure included $50.00 for cost of Dr. Horn's testimony, found to be necessary.

Upon review by the district court the above order was upheld by summary judgment in favor of the Deputy Commissioner, and the appellants brought the present appeal.

■ As initially indicated, our decision in this case is based on appellant's first claim of error: that O'Keeffe's second order modified his prior order on the ground of a mistake in the determination of fact when there was no evidence of a mistake having been made.[4]

4. As to the second allegation of error, that O'Keeffe erroneously received Dr. Rodnan's report in evidence without the doctor being present and subject to cross-examination, the underlying question of whether agency action based upon hearsay medical evidence satisfies the substantial evidence test may soon be answered by the Supreme Court. See

At least twice before we have had occasion to deal with the question of the quality of proof necessary to support a modification of an order by a deputy commissioner on the ground of a mistake in a determination of fact. In Stansfield v. Lykes Bros. S. S. Co., 5 Cir. 1941, 124 F.2d 999, in discussing the reconsideration of an award on this ground, we stated:

"While we think it plain therefore, that new evidence may be fairly introduced in a proceeding to re-open on the ground of a mistake in the determination of a fact, and that this new evidence need not be 'newly discovered', *we think it equally plain that the statute means something more than that the commissioner may change his mind whenever he pleases, and either on the same evidence or on new evidence, without a showing that there was a mistake in a determination of fact, make a new award.* The general right to make a new award which is allowed under the terms of some statutes is one thing, and the right to make a new award on the limited grounds set out in the Federal statutes is quite another. Under the Federal statutes, a re-award may not be made unless there is evidence reasonably supporting the finding, on which the new award must rest, of a change of conditions, or of a mistake in the determination of a fact by the commissioner." [Emphasis added]

Then, in the later case of Case v. Calbeck, 5 Cir., 1962, 304 F.2d 198, it was noted that:

"Section 922 does not contemplate that the evidence which formed the basis for the previous finding and order shall again be reviewed and evaluated;

Richardson, Secretary of Health, Education and Welfare v. Perales, 400 U.S. 811, 91 S.Ct. 32, 27 L.Ed.2d 41, on certiorari from Cohen v. Perales, 5 Cir. 1969, 412 F.2d 44, rehearing denied 416 F.2d 1250, argued before the Supreme Court on January 13, 1971, 39 U.S.L.W. 3286.

to hold otherwise would be to render meaningless the provision that such order becomes final unless proceedings for review are brought within thirty days. Thus, the review proceeding is a new proceeding, limited in scope, in which the deputy commissioner may determine from new evidence whether a new compensation order should be filed. Support for this interpretation of Section 922 is found in Tudman v. American Shipbuilding Co., 170 F.2d 842 (7th Cir., 1948); Luckenbach S. S. Corp., Inc. v. Norton, 106 F.2d 137 (3rd Cir., 1939); Bethlehem Ship-building Corp. v. Cardillo, 102 F.2d 299 (1st Cir., 1939); and Pillsbury v. Alaska Packers Association, 85 F.2d 758 (9th Cir., 1936)."

It is our determination that the facts in this case allow only one conclusion: the Deputy Commissioner, upon reopening the claim, evaluated essentially the same evidence which formed the basis for his previous order and simply changed his mind without any evidence of a mistake having been made. This becomes evident upon a comparison of the evidence presented at each of the two hearings involved. We have previously shown that at the first hearing the testimony was conflicting as to whether Jacques' employment contributed to his disability, and that O'Keeffe, in his first order, found that it did not. The appellee urges the distinction that the original determination was bottomed upon the finding that Jacques' condition was not "caused" by his employment whereas O'Keeffe's later order awarding compensation was undergirded by his finding that Jacques' disability was "materially aggravated and hastened" by his employment. This point does not bear critical analysis. The record shows that O'Keeffe in issuing the first order considered not only whether Jacques' employment caused his underlying illness but also whether a pre-existing condition was aggravated by his employment. Dr. Montgomery's opinion offered at the first hearing was that Jacques' employment either caused *or contributed* to his impairment. Dr. Anderson indicated that he did not believe Jacques' employment either caused his condition *or could have worsened any pre-existing condition*. Moreover, in his letter requesting a report from Dr. Horn, O'Keeffe specifically requested Dr. Horn's opinion "on the relationship between the claimant's lung condition and his employment environmental exposures". It thus becomes apparent that O'Keeffe's conclusion in his first order, "That the claimant's present lung condition is not the result of exposure to environmental factors at the work site", went to the question of aggravation of pre-existing condition as well as to the question of primary cause.

We think it is equally clear that at the second hearing no new evidence was presented which showed mistake in a determination of fact. Appellee points to the testimony of Dr. Horn that he had followed Jacques' condition for the previous two years and that he felt that Jacques' employment certainly aggravated his underlying condition. However, Dr. Horn also indicated that his opinion had not changed since 1966, and that he would have stated the same thing had be been called as a witness at the first hearing. This is demonstrated by his 1966 report to O'Keeffe in which was indicated Dr. Horn's belief that there was a direct relationship between Jacques' employment and his disability.

It is appropriate next to consider Dr. Rodnan's report, received in evidence at the second hearing over objection by Aerojet. In this report Dr. Rodnan dealt specifically with the question of the relationship between Jacques' illness and his employment environmental conditions. Appellee asserts that Dr. Rodnan shifted the focus on Jacques' illness from cause to aggravation and our attention is directed to Dr. Rodnan's statement that Jacques' employment environmental conditions "may very well have materially aggravated or hastened the disabling condition". This carefully qualified statement standing alone added little to what O'Keeffe had already heard. It was cumulative at most. Considered in con-

text, its probative value is thoroughly diluted by an observation made by Dr. Rodnan in the same report. After noting that there was no convincing evidence in the record that Jacques' condition was caused or precipitated by his employment, Dr. Rodnan stated that: "It is difficult if not impossible to determine on the basis of the available evidence whether the patient's disabling condition was materially aggravated or hastened by his occupational environmental exposure".

Thus, it is apparent: that following the second hearing O'Keeffe was no more enlightened than he was after the first; that the second order awarding compensation to Jacques was grounded upon the same and similar evidence to that which formed the basis of the first order and not upon any demonstrable mistake in a determination of fact. For this reason, the Deputy Commissioner's second order was in contravention of Title 33, U.S.C., Section 922 and may not stand. The statute simply does not confer authority upon the Deputy Commissioner to receive additional but cumulative evidence and change his mind.

█ We come finally to appellee's contention that Aerojet is barred from objecting to the reopening of the proceedings by failure to raise the point initially at the administrative level, citing United States v. L. A. Tucker Truck Lines, 1952, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54. The point is without merit. Section 922 clearly permits a reopening on the initiative of the Deputy Commissioner for further proceedings to review a compensation case. The point is not that the proceedings were reopened. It is as we have tried to make clear that no mistake in the prior determination of fact was shown. The appearance of counsel for Aerojet at the hearing, his objection to the receipt of evidence, his cross-examination of witnesses, all reflect that Aerojet opposed vigorously the proposed modification of the original order rejecting the claim.

The judgment below is set aside. We reverse and remand to the district court

for entry of judgment in favor of Aerojet and against the Deputy Commissioner on Aerojet's Motion for Summary Judgment.

Reversed and remanded with directions.

TUTTLE, Circuit Judge (dissenting):

With deference, I must dissent from the judgment of the court and the opinion that leads to it.

If we were to approach the problem here presented without any intervening legal precedents, coercing us to either position, (which, for reasons I shall state below, I really think is the situation), I would start fresh by looking at the statutes involved. Such a study would lead me to the following rationalization:

We have here what all must concede to be remedial legislation, requiring liberal interpretation for the benefit of the class for whom it was passed, that is to say, the covered employees.

We find that § 919 provides for the filing of a claim and the conducting of a hearing by the deputy commissioner thereon. § 920 then creates certain presumptions favoring the claimant.

Now come the critical sections, so far as this litigation is concerned: § 921(a) provides:

"A compensation order shall become effective when filed in the office of the deputy commissioner as provided in § 919 of this title, and, unless proceedings for the suspension or setting aside of such order are instituted as provided in (b) of this section shall become final at the expiration of the 30th day thereafter."

And then comes (b), and here I think we must note specifically the limitations upon the right of review:

"*If not in accordance with law*, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order, and instituted in the

Federal District Court for the Judicial District in which the injury occurred * * *." (emphasis added)

Then (d) provides:

"Proceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, shall not be instituted otherwise than as provided in this section and section 918 of this title."

(I find nothing in § 918 that is of significance here.)

We now come to section 922, the section under which deputy commissioner O'Keeffe purported to act in this case. That section says:

"Upon his own initiative, or upon the application of any party in interest, on the ground of a change in conditions or because of a *mistake in a determination of fact by the deputy commissioner*, the deputy commissioner may, at any time prior to one year after the date of the last payment * * * issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or *award compensation*." (emphasis added)

The most significant thing to me about these statutes is that the provisions of § 922 afford the only vehicle by which a claimant, who frequently is without counsel, may have an opportunity (always available to an ordinary litigant in a United States District Court) to have the trial judge take another look at the evidence and determine whether he has made a "mistake in his findings of fact." As we all know, even in the case of a jury trial, the losing party may file a motion for a new trial, solely on the ground that the jury's determination is strongly against the weight of the evidence, and the trial court has a very broad discretion to grant a new trial, and as we all know, the first grant of a new trial is hardly ever appealable.

Under the sections cited above, the only basis for bringing a court action within 30 days as provided in § 921(b) is that it is "not in accordance with law" and this procedure under § 921(d) is exclusive, except, of course, whatever is provided in § 922. Thus, it is very wide of the mark to say, as Judge Hutcheson did in his two opinions, that to permit the deputy commissioner to reconsider his determinations of fact by reviewing the record and even by considering cumulative evidence "would make useless the 30 day limitation in § 921." A claimant has no right to appeal under § 921 on *fact* issues in any event. Thus, as I see it, the only possibility of review on the facts, even by the trier of the facts himself, is by the language contained in § 922 which is before us for application. Of course, I realize that § 921 would authorize a suit to be filed to set aside either an award or a denial of a claim on the ground that it was not in accordance with law if it could be shown it was totally without evidence to support it. This, however, is quite a different thing from the discretionary right of a trial court to set aside a verdict, or the court to set aside a judge-tried fact issue, upon motion by the losing party that a jury's determination or the judge's determination was strongly against the weight of the evidence.

In sum, as I see it, the only way a claimant can have any review of the weight of the evidence, even to the extent of asking the commissioner to take another look at what he has done, is that provided in § 922. I find nothing in this section which warrants the conclusion that this is not precisely what is contemplated. The question whether there has been "a mistake in determination of fact by the deputy commissioner" is necessarily referable to the record before him. The only mistake he could make would be because he decided wrongly with respect to what was before him for determination. How, then, can we conclude that the statute does not authorize him to reopen a record if he is convinced that he decided wrongly, i. e. that he made a "mistake in a determination of fact".

So much for the statute and what appears to me to be a proper interpretation.

We next come to the case law in our circuit, which, is all that we are bound by. It is certainly true, as Judge Simpson has stated in his opinion, that Judge Hutcheson, in a *liberal* interpretation of the statute used the language quoted in the opinion before us. As so frequently turns out, the limiting language used in Judge Hutcheson's opinion in the first case cited, Stansfield v. Lykes Brothers S.S. Company, 5th Cir., 124 F.2d 999 was clearly dictum. In that case, the court approved the action of the deputy commissioner in reopening on the ground of a mistake in the determination of a fact by him, even though the court found that the evidence received on the reopening related to a fact that was known at the time of the original hearing. However, the evidence that was heard on the reopened proceeding did describe a physical condition that was not found to exist on the first hearing. Thus, the court was able to find that the deputy commissioner had made a mistake in the determination of a fact, not because he concluded he had erroneously evaluated the evidence the first time but because the evidence had not been brought forward and he knew nothing of the more aggravated condition that was developed on the new hearing.

Clearly, the Court of Appeals could find that this hearing was justified by reason of a mistake in the determination of a fact because of the new evidence dealing with new facts. It was, thus, not necessary for the court to go further and say what kind of a hearing, or how much evidence, would be necessary in another type of case, or whether the commissioner could or could not "change his mind whenever he pleases", even if convinced that he had made a mistake the first time, because that issue was not before the court.

The next case relied on is Case v. Calbeck, 304 F.2d 198, also written by Judge Hutcheson. It is my studied opinion that this also is dictum, or at least is not a controlling precedent on the situation before us, because the issue was not there before the court.

What was before the court in Calbeck was the question of a reversal of the deputy commissioner's *second* hearing in which he found *against* the claimant. In other words, the commissioner reopened under § 922, took additional evidence, and as a result of the second hearing found against the claimant. Since the court found that there was substantial evidence to support the deputy commissioner's findings at the reopened hearing, the court necessarily held that the fact issue could not be reviewed by the courts. It was therefore, unnecessary for the court to repeat again what § 922 contemplates. The question of what is and what is not dictum is, of course, not simple, but, as I read the case, I think it is clear that the issue was sufficiently different so that if our interpretation of the law leads us to a different conclusion there is nothing in this opinion that is binding in light of the posture of this case as distinguished from that in *Calbeck*.

If we are free to disregard *Calbeck* then I take grave exception to the statement in that opinion, for the reasons stated above: "to hold otherwise would be to render meaningless the provision that such order becomes final unless proceedings for review are brought within thirty days." As I have pointed out above, there is *no* review within 30 days for any ground other than that the award is "not in accordance with law". I also take exception to the opinion's reading into this statute any requirement that the deputy commissioner must determine "*from new evidence* whether a new compensation order should be filed."

I am emboldened to criticize this opinion further because, contrary to what is stated in the opinion, I do not find support for this interpretation of § 922 in Tudman v. American Shipbuilding Company, 177 F.2d 842 (7th Cir., 1948), or the other cases cited. My reason for saying this is that in *Tudman* there was the same situation before the seventh circuit as was before this circuit in Case v. Calbeck, supra; that is, the deputy commissioner *did* grant a § 922 hearing, but con-

cluded that the evidence produced *did not* warrant a different finding by him than he had made originally. The court then went on to recite what it thought to be the standards applicable to § 922. I think this was dictum just as was the language of our court in the *Calbeck* case.

*Tudman* cites Bethlehem Shipbuilding Corp. v. Cardillo, (1st Cir.), 102 F.2d 299. In that case the deputy commissioner reopened under § 922; a challenge was made that this section represented an amendment to the statute and should not be retroactive. The court overruled that objection and the court said:

"We therefore hold that Section 22 (§ 922 of the code), as amended, applies to a new award made thereunder and in modification of a prior award made after Section 22, as amended, became effective, even though the injury, out of which the new award arose, was sustained prior to the time the amended section took effect."

"Having held that Section 22, as amended, is applicable to the compensation case which deputy Cardillo had before him on review, the next question is *whether Section 22, as amended, required that he should state in so many words that he found a change in conditions or a mistake in a determination of fact* by deputy Monahan, or whether the language of that section is complied with if his new compensation order contains findings of fact disclosing a change in conditions or a mistake in the determination of fact by Monahan upon which he predicated his new award of March 3, 1937. Cardillo in his findings of fact did not state in words that he found a change in conditions or a mistake in a determination of fact by Deputy Monahan, and the language of Section 22, as amended, does not in terms require such a statement. But he stated in his new order specifically and in detail the facts that he found, and, immediately following the statement of facts, he stated that his new order or modification of Monahan's order of

August 21, 1936, was made 'upon the foregoing facts' ". (emphasis added)

This is precisely the language used here by deputy commissioner O'Keeffe.

Then, especially, we should note the next paragraph in this opinion.

"Section 22, as amended, is a remedial statute and calls for a liberal construction; and where it is plain from the facts found by the deputy commissioner, acting under that section, that his order is based either on a change of conditions or *on a mistake in regard to the determination of a fact by the deputy commissioner making the order in the compensation case under review,* the intent and meaning of the statute are adequately complied with." (Emphasis added.)

There is nothing I can find in the Cardillo case that says that it is inappropriate for the Deputy Commissioner to consider the record as originally made by him.

The next case referred to is Luckenbach S.S. Co., Inc. v. Norton, (3rd Cir., 1939), 106 F.2d 137. There, as pointed out by the court:

"Section 22 authorizes the deputy commissioner to review a compensation case 'on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner.' In the order of August 9, 1935, the deputy had found that there had been no change in Graham's condition of partial disability, and compensation continued on that basis until March 7, 1938, when payments ceased. On May 30, 1938, upon Graham's application for review, the deputy commissioner found that the disability was permanent, a condition which, he pointed out, had not been determined in any previous order. Appellant argues that there had been no change or mistake as contemplated by the section. But to follow such an interpretation would be to give the statute *a narrowly technical and impractical construction. Such a construction has not been favored.* (Citing Balti-

more & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 52 S.Ct. 187, 76 L.Ed. 366, and other cases. * * *) We do not believe the Act was intended to prevent the deputy commissioner from withholding determination as to whether the condition was temporary or permanent, and subsequently finding that it was permanent. The decision rests largely in the deputy commissioner's discretion. (Citing Simmons v. Marshall, 9th Cir., 94 F.2d 850.) There is no suggestion here that the evidence does not support the order." (emphasis added.)

It is submitted that there is no suggestion here to support the statement that the evidence taken before the commissioner at the first hearing was not relevant to a determination by the commissioner when he was called upon to make a change in the order favoring the claimant, finding that the condition previously considered as temporary was later found to be permanent.

Touching on the meaning of the words "a mistake in the determination of a fact", it seems to me that the plain meaning of the words contemplates that where a trial court or tribunal decides a fact issue one day holding there is no causation for an injury and then he decides the next day that he was mistaken and, in fact, there *was* causation of the injury, this is a "mistake in a determination of fact" by the deputy commissioner, or at least so it is in his opinion, and that is all we have to deal with.

Since I consider it entirely appropriate for the commissioner to reopen upon his determination that he made a mistake in his first finding of fact, I think we need not come to the question as to the admissability of the experts testimony by deposition, rather than by oral testimony. If my views are correct that § 922 does give to the losing claimant for compensation an opportunity to have the case reopened on the ground that the deputy commissioner decided it wrongly, then I think the case should be remanded to the district court, and possibly by it to the deputy commissioner to enable him

to determine whether he would make his amended findings on the original record or, if not, whether he should give an opportunity to the appellants here to make such further examination of the expert witness as they deem essential, in the event that appears to be the appropriate course by the district court.