Gustavo GALVEZ–LETONA, Plaintiff,

v.

Wayne KIRKPATRICK, Acting OIC; Joseph Greene, District Director INS; Janet Reno, U.S. Attorney General, Defendants.

No. 2:99–CV–83K.

United States District Court,
D. Utah,
Central Division.

July 15, 1999.

Hakeem Ishola, Todd A. Utzinger, Leonor E. Perretta, Ishola Utzinger & Perretta, Salt Lake City, UT, for Gustavo Galvez–Letona, plaintiff.

Carlie Christensen, U.S. Attorney's Office, Kristen A. Giuffreda, U.S. Dept of Justice, Civil Division, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

KIMBALL, District Judge.

This matter is before the court on plaintiff's Petition for Review and Declaratory Judgment and defendants' Motion for Summary Judgment. The matter came on for hearing on Monday, June 28, 1999. The petitioner was represented by Todd A. Utzinger and Leonor E. Perretta. The defendants were represented by Kristen A. Giuffreda and Jeanette Swent. Oral argument was heard and the matter was taken under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the parties' motions. Now being fully advised, the court enters the following Memorandum Opinion and Order.

## I. BACKGROUND

The plaintiff, Mr. Gustavo Galvez–Letona, is seeking *de novo* review of a decision of the Immigration & Naturalization Service denying his application for naturalization. He further seeks declaratory judgment pronouncing the statute in question and its implementing regulations and application by the Service to be in violation of the Rehabilitation Act of 1973, or in the alternative he seeks declaratory judgment that the Service incorrectly implemented the regulations and a finding that he does meet the qualifications for naturalization. He also requests costs and fees under the Equal Access to Justice Act and the Rehabilitation Act.

The facts in this matter are undisputed. The petitioner, Mr. Galvez is twenty-six years old and has permanently resided in the United States since April of 1983, when at the age of ten he came to this country from Guatemala. Mr. Galvez lives in Salt Lake City with his mother, Lily Letona, his brother, his sister-in-law and their children, all of whom are United States Citizens. The petitioner suffers from Downs Syndrome and is severely disabled both mentally and physically. He is unable to walk, talk, read or write. His mental capacity is that of an eighteen month old child. He is completely dependant upon his mother.

Mr. Galvez's mother became a legal permanent resident in April of 1980 based on an approved INS family petition which was filed by Ms. Letona's sister. Both Mr. Galvez and his brother should have been granted derivative permanent residence as they were both under 21 and unmarried at the time. Had this happened, Mr. Galvez would have been granted derivative citizenship when his mother was naturalized on January 26, 1990. It is unclear why the Guatemalan Consolute did not grant Mr. Galvez and his brother derivative permanent residence, however, because it was not granted at that time Mr. Galvez was not approved for legal permanent residence until November 30, 1990 at which time he was 18 and therefore no longer eligible for derivative citizenship under the naturalization laws.

As a legal permanent resident, Mr. Galvez was eligible for Social Security Disability payments, however, under recent

welfare reform, these benefits have been discontinued to individuals who are not U.S. citizens. The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 provided, among other things, that as of August 1, 1997, SSI benefits to disabled persons would be discontinued to individuals who are not U.S. Citizens, even if they are legal permanent residents. For this reason, Mr. Galvez's mother filed an application for naturalization on her son's behalf on October 9, 1996. Pursuant to 8 U.S.C. § 1423(b)(1), the Service waived the English and history requirements including the written examination due to Mr. Galvez's disability. However, the Service determined that Mr. Galvez was still required to affirmatively demonstrate attachment to the principles of the Constitution, take the oath of allegiance and demonstrate an understanding of the oath of allegiance. The Service interviewed Mr. Galvez on February 12, 1997 and he was obviously unable to fulfill these requirements. His mother filed a petition for rehearing and the matter was reheard by a supervisor on October 14, 1998 at which time Mr. Galvez's petition was again denied leading to the Petition before this court.

## II.  STANDARD OF REVIEW

■ Mr. Galvez has exhausted all administrative remedies available under section 336 of Title 8, Code of Federal Regulations by requesting and appearing at a rehearing before an Immigration officer. This court has jurisdiction to review a denial of a petition for naturalization. Such review shall be *de novo* and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on the application. The court may either determine the matter or remand it to the Service. *See* 8 U.S.C. § 1421(c) and 1447(b).

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 322, 106 S.Ct. 2548.

In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir.) *cert. denied*, 502 U.S. 827, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). Finally, all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D.Utah R. 202(b)(4). The parties agree that the facts in this matter are undisputed and each party has moved for a final judgment on the law.

**1222**

## III. DISCUSSION

Mr. Galvez sets forth three separate arguments. First, that the Service erred in requiring that he affirmatively demonstrate and communicate his attachment to the principles of the Constitution and demonstrate an understanding of and willingness to take an oath of allegiance. Secondly, that the denial of his application for naturalization violates the Rehabilitation Act of 1973, and lastly that the Service erred in finding that Mr. Galvez is not attached to the principles of the Constitution and that he is unwilling to take an oath of allegiance.[1]

### A. The Service's Interpretation of the Statute

■ Mr. Galvez argues that the Service wrongly interpreted the statute at issue and that persons who suffer from physical or developmental disabilities or mental impairments whose condition renders them unable to comply with the requirements of attachment and oath are exempt from these requirements as a matter of law.

The Service's denial of Mr. Galvez's application was based upon a memorandum from the INS office entitled a Supplemental Policy Guidance for Field Offices Part I and II. Part I was issued on March 12, 1997 and advised officers to hold these type of cases in abeyance until further guidance is provided regarding how to deal with the denial. The Service requested legal guidance from the Office of Legal counsel on how to deal with these cases and whether or not a guardian could act as a proxy. The Service was advised that everyone must take the oath and that a proxy is not allowed. A year later Part II was issued which concluded that Congress did not waive the oath of allegiance requirement for persons with disabilities and that individuals with such a significant cognitive impairment that he or she cannot demonstrate an understanding of the na-

ture of the oath should be denied naturalization.

Mr. Galvez further argues that although the agency is entitled to deference in interpreting the regulations it enforces, that such deference is not boundless, particularly where it is irrational or clearly erroneous. Petitioner states that the Service was clearly erroneous in its interpretation of 8 U.S.C. § 1423(b)(1) which clearly allows for waivers of the English and history requirements for disabled people. If someone is unable to pass this part of the test it follows that he or she would be unable to pass the requirement of attachment and oath. Section 1423(b)(1) provides a sweeping exemption to the testing requirements and a reasonable interpretation would include the attachment and oath requirements. This section taken in conjunction with § 1448(c) would waive this requirement for disabled individuals. Section (c) deals with the consideration of special circumstances and an expedited oath for certain people including those with disabilities so long as all other requirements are met. The other requirements include 1) the applicant is at least 18; 2) lawfully admitted as a permanent resident; 3) resided continuously within the U.S. for 5 years; 4) been physically present in the U.S. for at least 30 months of the five years; 5) resided at least three months in a State or Service district having jurisdiction over the applicant's place of residence; 6) resided continuously within the U.S. from the date of application to admission to citizenship; 7) been a person of good moral character, and; 8) is not a deserter. It is undisputed that Mr. Galvez meets these additional requirements for citizenship.

■ Although the agency's deference in interpreting the regulations it enforces is not boundless, *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984),

1. Initially, Mr. Galvez also argued that the statute and its application violated his rights to due process and equal protection under the

Fifth Amendment, however, counsel for Mr. Galvez orally withdrew these arguments at the time of hearing.

this court agrees with the defendant that the agency's interpretation in this matter was not clearly erroneous. The statute does not clearly waive the attachment and oath requirements for people with disabilities as argued by Mr. Galvez. To the contrary, 8 U.S.C. § 1423(b)(1), refers specifically to subsection (a) stating that "[t]he requirements of subsection (a) of this section shall not apply to any person who is unable because of physical or developmental disability or mental impairment to comply therewith." Subsection (a) deals specifically with the testing requirement which includes "an understanding of the English language, including an ability to read, write, and speak words in ordinary usage" and "a knowledge and understanding of the fundamentals of the history, and of the principles and form of government of the United States." This section says nothing about the attachment and oath requirements. The statute is plain on its face and "when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished." *Metropolitan Stevedore Co. v. Rambo,* 515 U.S. 291, 295, 115 S.Ct. 2144, 132 L.Ed.2d 226 (1995).

It is clear to this court that had Congress intended the waiver to apply to the attachment and oath requirement, it would have specifically stated so in the statute, particularly since Congress did provide for other limited exceptions to these requirements. 8 U.S.C. § 1445(e) provides for the filing of an application other than in the Attorney General's Office and for the administration of the oath of allegiance "other than in a public ceremony" if the Attorney General determines that the person has a serious permanent disability which "prevents the person's personal appearance" or which "so incapacitates the person as to prevent him from personally appearing" to take the oath. Because Congress specified this exception for individuals with disabilities, it seems certain that if a waiver of the oath had been intended it would have been specified.

Further, Congress did set forth a waiver of the attachment and oath requirements for children who are unable to understand its meaning. *See* 8 U.S.C. § 1448(a). This is the only circumstance where Congress specified a waiver of the attachment and oath requirements.

The Service's interpretation of the statute and regulations was not clearly erroneous and the statute is clear on its face and for these reasons Mr. Galvez's argument on this point fails as a matter of law.

B.   The Service's Interpretation of Mr. Galvez's Willingness to Show Attachment and Take the Oath of Allegiance.

■   Mr. Galvez next argues that the Service erred in finding that he did not fulfill the attachment and oath requirements simply because he could not vocalize nor communicate his compliance with those requirements. Galvez argues that he has demonstrated through his actions and conduct that he is attached to the principles of the Constitution, favorably disposed toward the good order and happiness of the United States and willing to take the oath of allegiance. Nothing he has done or failed to do during his life calls into question his allegiance to the United States or its way of government.

Mr. Galvez argues that "attachment to the Constitution" has never been very specifically defined and that attachment is nothing more than an agreement to act in general accord with the basic principles of the community. Further, the denial of an application for naturalization for a failure to show attachment has generally been based upon affirmative acts of the applicant. Individuals have been denied naturalization for such activities as blatantly violating the laws, refusing to vote, serve on a jury or participate in government. Mr. Galvez is a law abiding citizen who has never done anything illegal or contrary to the government, and by his actions he has shown attachment to the Constitution.

Although this court agrees that Mr. Galvez has always behaved lawfully and believes that Mr. Galvez will continue to behave lawfully in the future, this court also believes that showing attachment to the Constitution must consist of more than a negative. Mr. Galvez is unable to understand what the Constitution is, let alone able to show any kind of attachment to the principles of the Constitution. Mr. Galvez has the mental capacity of an eighteen month old child and is therefore unable to form the intent to either act illegally or legally. Further, even if attachment could be shown by a negative, the petitioner basically admits that there are no circumstances under which he could take an oath of allegiance. For these reasons the Service did not commit error in finding that Mr. Galvez had not met the attachment and oath requirements.

### C. The Rehabilitation Act of 1973

Lastly, Mr. Galvez argues that the denial of his application based on the Service's interpretation of the relevant immigration statutes and regulations, violates the Rehabilitation Act of 1973 ("The Rehab Act"). The Rehab Act provides that: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity ... conducted by any Executive agency ..." 29 U.S.C. § 794(a). Congress has unequivocally expressed its intent to provide disabled victims of government discrimination a private right of action for equitable relief and damages, including attorney's fees, against the government discriminator. *See Share Ourselves v. Social Security Administration,* 971 F.2d 260, 264 (9th Cir.1992).

A review of the Supplemental Policy Guidance for Field Offices, Part I and II, indicates that the Service acknowledges that it is bound by the terms of the Rehabilitation Act. In Part I, the Service discussed the possibility of allowing developmentally disabled individuals the use of a legal guardian as a proxy in the naturalization process as an accommodation under the provisions of the Rehab Act. *See* INS Supplemental Policy Guidance, Part I. However, the memorandum then goes on to state, without explanation, that a proxy will not be allowed. Part II also states that some accommodations may be necessary as the Service is bound by the provisions of the Rehab Act.

To establish a violation of the Rehab Act, one must demonstrate that: 1) he is a qualified individual with a disability; 2) he was excluded from the participation in or denied a benefit or was otherwise discriminated against; 3) by an Executive agency; 4) that such denial was based on his disability. *See Layton v. Elder,* 143 F.3d 469, 472 (8th Cir.1998). The facts are undisputed that Mr. Galvez is an individual with a disability. There is no question that he suffers from severe Downs Syndrome which impairs his mental capacity to such an extreme that he has been found to have the mental ability of an eighteen month old child. Mr. Galvez also meets the second and third requirements under the Rehab Act. He was denied a benefit, naturalization, by an Executive agency. Lastly, it is clear that the denial of Mr. Galvez's application for naturalization was based solely on his disability. Mr. Galvez meets all other requirements for naturalization. He is over age 18. He was lawfully admitted as a permanent resident on November 30, 1990. He has resided continuously within the United States for at least five years. He has been physically present in the United States for at least 30 months of the five years preceding the application. He has resided at least three months in a State or service district having jurisdiction over the applicants place of residence. He has resided continuously within the United States from the date of application to admission to citizenship. He has been a person of good moral character, and finally, he is not a deserter. There

are three reasons that Mr. Galvez's application for naturalization was denied. First, he was unable to demonstrate attachment to the principles of the Constitution. Second, he was unable to demonstrate his understanding of the oath of allegiance, and lastly he was unable to demonstrate a willingness to take the oath. He was unable to meet these three requirements only because he is disabled. Consequently, the sole reason for the denial of his application is his disability.

The Service argues that denying Mr. Galvez's application was not in violation of the Rehab Act. The Act prohibits discrimination against any "otherwise qualified individual with a disability". As stated in Department of Justice regulations, an "otherwise qualified" handicapped person is one "who meets the essential eligibility requirements and who can achieve the purpose of the program or activity without modifications in the program or activity that the agency can demonstrate would result in a fundamental alteration in its nature." 28 C.F.R. § 39.103. Thus, Mr. Galvez is an "otherwise qualified" individual only if he can meet the "essential" eligibility requirements of the program without any modification at all, or with "reasonable" modifications that do not alter an "essential" requirement that is basic to the nature and purpose of the program. *See School Board of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987).

The defendants argue that the attachment and oath requirements are essential to becoming a citizen and that waiving these requirements would not be a reasonable modification. Therefore, if an individual is unable to demonstrate attachment and take the oath of allegiance, he or she is not "otherwise qualified" and the Rehab Act does not apply. This court does not agree. Although the case law is clear that where a program requirement is found to be essential to the program, the Rehab Act does not mandate an accommodation that would alter or eliminate that requirement,

waiving the attachment and oath requirement is a reasonable modification that does not eliminate an essential aspect of the program.

Although the attachment and oath requirements do play an important role in becoming a citizen, these requirements are not essential. Congress has made it clear that these requirements are not essential by building exceptions to these requirements into the statute. 8 U.S.C. § 1448(a) provides a discretionary exception of this requirement for children.

> In the case of the naturalization of a child under the provisions of section 1443 of this title the Attorney General may waive the taking of the oath if in the opinion of the Attorney General the child is unable to understand its meaning.

A child need only take the oath and demonstrate attachment if that child is capable of understanding it. If in fact the attachment and oath requirements were essential, children could not be naturalized until they were old enough to fulfill these requirements. Further, Congress has provided for expedited oaths for religious purposes and for people with disabilities. *See* 8 U.S.C. § 1448(c). The cases cited by the defendants in support of their argument that essential requirements need not be waived nor modified deal with such issues as a school board not being required to accommodate a disabled teacher who could not manage a classroom alone where the ability to do this was an essential function of the job. *See Borkowski v. Valley Cent. School Dist.* 63 F.3d 131 (2d Cir.1995). In this matter, if the attachment and oath requirements were essential they would not be waived for anyone for any reasons. Obviously Congress did not see these requirements in that way.

Mr. Galvez is no different than a child who is unable to understand the attachment and oath requirements. He is in the constant care of his mother, as is a child. He cannot support himself and never will be able to. If anyone should have these

requirements waived it is those people who are in Mr. Galvez's situation. Mr. Galvez's application for naturalization was denied for the sole reason that he is disabled and this is a violation of the Rehabilitation Act. Therefore, for the reasons stated herein it is hereby

ORDERED that Mr. Galvez's Petition for Naturalization is GRANTED and this matter is REMANDED to the INS. The INS is directed to grant petitioner's request for naturalization forthwith. Defendants' Motion for Summary Judgment is DENIED. The petitioner may submit affidavits regarding attorneys fees and costs no later than July 30, 1999. The defendants may respond no later than August 15, 1999 in order that the appropriateness of costs and fees may be determined by the court at a later date.