# Role of Legal Guardians or Proxies in Naturalization Proceedings

Section 504 of the Rehabilitation Act requires the Immigration and Naturalization Service as a reasonable accommodation to permit a legal guardian or proxy to represent a mentally disabled applicant in naturalization proceedings.

March 13, 2002

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
IMMIGRATION AND NATURALIZATION SERVICE

You have asked for our opinion whether the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (1994 & Supp. IV 1998), requires the Immigration and Naturalization Service ("INS") as a reasonable accommodation to permit a legal guardian or other proxy to represent a mentally disabled applicant in naturalization proceedings.[1] For the reasons set forth below, we conclude that the Rehabilitation Act does require such accommodation.

## I. Background

In response to earlier requests from your office, this Office issued two opinions in 1997 concluding that the oath of allegiance required under section 337 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1448, could neither be waived by the INS nor satisfied by a guardian or proxy. We concluded that, under the statutory scheme established by Congress, the oath requirement was a fundamental and essential part of the naturalization process and that permitting a legal guardian or proxy to fulfill this central requirement thus would not constitute a reasonable accommodation under the Rehabilitation Act. *See* Letter for David A. Martin, General Counsel, Immigration and Naturalization Service, from Dawn E. Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Personal Satisfaction of Immigration and Nationality Act Oath Requirement* (Apr. 18, 1997) ("April 1997 Opinion"); Letter for David A. Martin, General Counsel, Immigration and Naturalization Service, from Dawn E. Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Waiver of Oath of Allegiance for Candidates for Naturalization* (Feb. 5, 1997).

---

[1] Memorandum for Daniel Koffsky, Acting Assistant Attorney General, Office of Legal Counsel, from Bo Cooper, General Counsel, Immigration and Naturalization Service, *Re: Request for Advisory Legal Opinion on the Role of Legal Guardians or Proxies in Naturalization Proceedings* (Aug. 6, 2001). You have asked, in the alternative, whether section 337 of the Immigration and Nationality Act, 8 U.S.C. § 1448 (2000), should be construed to enable the INS to permit a proxy to play this same role. In light of our response to your Rehabilitation Act question, we find it unnecessary to address this question.

In 2000, Congress amended section 337 to allow the Attorney General to "waive the taking of the oath by a person if in the opinion of the Attorney General the person is unable to understand, or to communicate an understanding of, its meaning because of a physical or developmental disability or mental impairment." Pub. L. No. 106-448, 114 Stat. 1939 (2000) (codified at 8 U.S.C. § 1448(a)). The amended statute further provides that "[i]f the Attorney General waives the taking of the oath by a person under the preceding sentence, the person shall be considered to have met the requirements of section 1427(a)(3) of this title with respect to attachment to the principles of the Constitution and well disposition to the good order and happiness of the United States." 8 U.S.C. § 1448(a).

## II. Discussion

The 2000 amendment to section 337 removes the oath requirement as an obstacle to naturalization for certain individuals with disabilities. You ask further whether the Rehabilitation Act requires the INS to permit a legal guardian or other proxy to represent an individual with a mental disability throughout the naturalization process, from the filing of an application through the interview.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). This Office has previously advised that all INS programs and activities, including naturalization proceedings, are covered by this prohibition. *See* April 1997 Opinion at 1; Memorandum for Maurice C. Inman, Jr., General Counsel, Immigration and Naturalization Service, from Robert B. Shanks, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Section 504 of the Rehabilitation Act of 1973* (Feb. 2, 1983).

The question, therefore, is whether a person who, as a result of a disability, is personally unable to file an application or participate in an interview may be considered "otherwise qualified" for naturalization. Department of Justice regulations implementing section 504 for federally conducted programs define a "[q]ualified handicapped person" as one "who meets the essential eligibility requirements and who can achieve the purpose of the program or activity without modifications in the program or activity that the agency can demonstrate would result in a fundamental alteration in its nature." 28 C.F.R. § 39.103 (2001). These regulations are based on, and should be construed consistent with, a series of Supreme Court decisions interpreting section 504 in the context of programs receiving federal financial assistance. The Court first interpreted section 504 in *Southeastern Community College v. Davis*, 442 U.S. 397, 406 (1979), stating that "[a]n otherwise qualified person is one who is able to meet all of a program's

requirements in spite of his handicap." The Court held that an applicant with a serious hearing disability was not "otherwise qualified" under section 504 for admission to a nursing program where the ability to understand speech during the clinical phase of the program was considered essential to patient safety. The Court declined to require the college to accommodate the applicant by making "a fundamental alteration in the nature of [its] program." *Id*. at 410. The Court noted, however, that "situations may arise where a refusal to modify an existing program might become unreasonable and discriminatory." *Id*. at 412-13.

In subsequent cases, the Court has elaborated on the types of situations where modifications in a program may be required. In the employment context, the Court has advised that "[e]mployers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. . . . [T]hey cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies." *School Bd*. *of Nassau County v*. *Arline*, 480 U.S. 273, 289 n.19 (1987). In *Arline*, the Court defined "an otherwise qualified person" as "one who can perform 'the essential functions' of the job," but explained that "[w]hen a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any 'reasonable accommodation' by the employer would enable the handicapped person to perform those functions." *Id*. at 287 n.17 (quoting 45 C.F.R. § 84.3(k) (1985)). The Court distinguished, however, between reasonable accommodations and those that would require fundamental changes in a program. "Accommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee . . . or requires 'a fundamental alteration in the nature of [the] program.'" *Arline*, 480 U.S. at 287 n.17 (citations omitted) (alteration in original); *see also Alexander v*. *Choate*, 469 U.S. 287, 300 (1985) ("while a grantee need not be required to make 'fundamental' or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones"); *id*. at 299 n.19 ("the question of who is 'otherwise qualified' and what actions constitute 'discrimination' under [section 504] would seem to be two sides of a single coin; the ultimate question is the extent to which a grantee is required to make reasonable modifications in its programs for the needs of the handicapped").

Thus, in determining whether a person is "otherwise qualified" for a particular program, courts do not take an existing program as fixed. Instead, they ask whether the disabled person could meet a program's requirements if the program were revised to make reasonable accommodations for the disabled person. If permitting a legal guardian or other proxy to file an application and participate in an interview on behalf of a mentally disabled applicant does not eliminate essential requirements of, or otherwise fundamentally alter, the naturalization program, then a mentally disabled individual who meets all other requirements is "otherwise qualified" for naturalization.

We conclude that permitting a legal guardian or other proxy to play such a role on behalf of a mentally disabled applicant would not fundamentally alter the naturalization process and therefore is required by section 504. The INS may not "utilize criteria or methods of administration the purpose or effect of which would . . . [d]efeat or substantially impair accomplishment of the objectives of [the naturalization program] with respect to handicapped persons." 28 C.F.R. § 39.130(b)(3). Congress has already expressly provided that individuals with severe disabilities need not fulfill a number of significant statutory prerequisites for naturalization. By amending the INA to permit the Attorney General to waive the oath of allegiance for persons unable to comprehend its meaning, Congress has superseded our previous conclusion that mentally disabled applicants must personally fulfill that statutory requirement. Moreover, any person who receives such a waiver is also considered to have met the requirements of section 316 of the INA with respect to being "attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a)(3) (2000). In addition, Congress in 1994 amended section 312 of the INA, which requires applicants for naturalization to demonstrate understanding of the English language and the history and government of the United States, to exempt "any person who is unable because of physical or developmental disability or mental impairment to comply therewith." 8 U.S.C. § 1423(b)(1) (2000); *see* Pub. L. No. 103-416, § 108(a)(4), 108 Stat. 4305, 4309-10 (1994).

The only significant remaining substantive prerequisites for naturalization under the INA are (1) at least five years of continuous residence in the United States after being lawfully admitted for permanent residence, and (2) "good moral character" during that period. INA § 316, 8 U.S.C. § 1427. There is no question that a mentally disabled individual can satisfy the residency requirement and establish proof of residency through documentary evidence and the testimony of others. Whether a mentally disabled individual can establish "good moral character" might be facially less obvious, especially in the case of mental disabilities so severe that they render the individual not morally responsible for his actions. We note, however, that the INA essentially defines the term "good moral character" as the absence of bad moral character, as it specifies various circumstances that preclude a finding that a person is of "good moral character." *See* INA § 101(f), 8 U.S.C. § 1101(f) (2000) ("For the purposes of this chapter—[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established," has been "a habitual drunkard," has been convicted of certain crimes, has derived income principally from gambling activities or been convicted of two or more gambling offenses, has given false testimony to obtain immigration benefits, has been confined after conviction to a penal institution for 180 days or more, or has at any time been convicted of an aggravated felony.). The INS regulation states that the

determination of good moral character will be based on the elements listed in the statute and "the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2) (2000). The regulation includes additional prohibitive factors beyond those contained in the statute, specifying, for example, that in the absence of extenuating circumstances an applicant will be found to lack good moral character who has "[w]illfully failed or refused to support dependents" or "[h]ad an extramarital affair which tended to destroy an existing marriage," *id.* § 316.10(b)(3)(i), (ii), but does not impose any positive requirements for establishing good moral character. We therefore see no barrier to a mentally disabled applicant establishing the requirement of good moral character, *accord Galvez-Letona v. Kirkpatrick*, 54 F. Supp. 2d 1218, 1222, 1224 (D. Utah 1999) (finding it undisputed that applicant with mental capacity of 18-month-old child met all requirements for naturalization other than ability to take oath of allegiance, including good moral character), *aff'd on other grounds*, 246 F.3d 680 (10th Cir. 2001) (table), and we conclude that permitting an applicant to do so through the testimony of others would not fundamentally alter the naturalization process.

We thus find nothing in the naturalization process prescribed by the INA that requires a mentally disabled applicant personally to file an application or testify at an interview. While the Supreme Court has noted that "it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect," *INS v. Pangilinan*, 486 U.S. 875, 886 (1988) (quoting *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967)); *see also* INA § 316(e), 8 U.S.C. § 1427(e) (directing Attorney General to determine "whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship"), the means of carrying that burden may vary in particular cases. Indeed, the statute and regulations already make certain accommodations for persons with disabilities. *See* INA § 334(a), 8 U.S.C. § 1445(a) (2000) ("An applicant for naturalization shall make and file with the Attorney General a sworn application in writing, signed by the applicant in the applicant's own handwriting *if physically able to write*.") (emphasis added); 8 C.F.R. § 103.2(a)(2) (2001) ("legal guardian" may sign application "for a mentally incompetent person"). *Cf.* 8 C.F.R. § 341.2(a)(2) (2001) (incompetent applicant for certificate of citizenship "must have a parent or guardian apply, appear, and testify for the applicant"). The statute expressly grants the Attorney General discretion to "make such rules and regulations as may be necessary to carry into effect the provisions of this part [dealing with naturalization]" and "to prescribe the scope and nature of the examination of applicants for naturalization as to their admissibility to citizenship." INA § 332(a), 8 U.S.C. § 1443(a) (2000).

We therefore conclude that mentally disabled individuals who cannot testify in their own behalf or fill out an application without the assistance of a legal guardian

or other proxy may still be "otherwise qualified" for naturalization, and that section 504 of the Rehabilitation Act thus requires such an accommodation.[2]

M. EDWARD WHELAN III
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[2] Our conclusion is consistent with the legislative history of the 2000 amendment to section 337 of the INA. Proponents of that legislation expressed the view that the oath of allegiance was the sole remaining barrier to naturalization for individuals with severe mental disabilities. *See, e.g.*, 146 Cong. Rec. 12,994 (2000) (statement of Sen. Hatch) ("such persons are able to fulfill all other requirements of naturalization, *or it is clear that the Attorney General can waive them*") (emphasis added); *id.* (statement of Sen. Dodd) (1994 amendment "le[ft] the oath as the only barrier to citizenship for such individuals"); 146 Cong. Rec. 21,935 (2000) (statement of Rep. Smith) (bill will allow "disabled applicants who cannot understand the oath . . . to overcome this last obstruction to becoming a United States citizen").